CHARLES G. MILLER AND HAROLD B. MILLER, AS EXECUTORS OF THE ESTATE OF CHARLES A. MILLER, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 58712. Promulgated November 29, 1933.

*Ralph F. Staubly, Esq.,* for the respondent.

### OPINION.

MURDOCK: The Commissioner determined a deficiency in estate tax on the estate of Charles A. Miller in the amount of $165,258.47. The parties have filed a stipulation of facts, under which but one question is submitted to the Board for decision. That question is whether or not the decedent, together with his wife and six children, held certain shares in a British corporation jointly, with the right of survivorship. The respondent supports his determination solely on the ground that the property was held by the decedent and the others as joint tenants within the meaning of section 302 (e) of the Revenue Act of 1926. If it was so held, then both agree that its value would be properly included in the gross estate, because the decedent furnished all of the consideration when the stock was originally acquired. If it was not so held, the respondent concedes that only one eighth of the value should be included in the gross estate, as the petitioner contends.

The decedent died on May 2, 1927, a resident of Rye, Westchester County, New York. He was survived by his widow, May Bourne Miller, and their six children, Charles Gilbert Miller, Harold Bourne Miller, Clara Miller Prankard, Kate Carlyle Vail, Madeleine Miller Flammer, and May Miller Goss, all residents of the State of New York at all times material hereto. The decedent, prior to 1923, had purchased with his own funds 2,880 preference shares and 57,010 ordinary shares of Babcock & Wilcox, Ltd., a British corporation. His ordinary shares were increased to 114,020 by a stock dividend on May 17, 1923. He was then the sole owner and registered holder of these shares. On June 18, 1923, the decedent instructed the corporation to transfer all of his shares to himself, his wife, and their six children. He executed a written instrument in New York and forwarded it to England. Despite the words of the instrument, the only consideration was love and affection. The instrument was in the following form:

I, CHARLES A. MILLER, Rye, New York, U.S.A., in consideration of the sum of Ten shillings paid by Charles A. Miller, Clara M. Prankard, Charles G. Miller, Kate C. Vail, Harold B. Miller, Madeleine M. Flammer, May B. Miller and May M. Goss, hereinafter called the said Transferees:

Do hereby bargain, sell, assign and transfer to the said Transferees, on list attached, Twenty-eight hundred eighty (2880) Preference shares, Fifty-seven thousand & ten (57010) Ordinary shares, Fifty-seven thousand & ten (57010) Ordinary shares as at back of and in the undertaking called the Babcock and Wilcox Limited, .

To HOLD unto the said Transferees, their Executors, Administrators, and Assigns, subject to the several conditions on which I held the same immediately before the execution hereof; and we the said Transferees, do hereby agree to accept and take the said shares subject to the conditions aforesaid.

As WITNESS our Hands and Seals this eighteenth day of June, in the year of our Lord One thousand nine hundred and twenty-three.

Signed, sealed, and delivered,
by the above named

[Here follow, in the order given, the signatures and seals of Charles A. Miller, M. B. Miller, Charles G. Miller, Harold B. Miller, Clara M. Prankard, Kate C. Vail, Madeleine M. Flammer, May M. Goss.]

Thereafter the corporation issued new certificates for all of the stock. Each named the eight persons as registered owners of the stock. The certificates were kept in New York. In accordance with written instructions from the eight persons, dividends on 57,010 ordinary shares were paid to the decedent and dividends on 57,010 ordinary shares were paid to May Bourne Miller, respectively, for account of the eight persons. There was no further change in the situation until the decedent died.

The respondent argues that the law of England, the domicile of the corporation, is controlling on the question of whether the shares were owned in joint tenancy or in common; while the petitioner contends that the law of New York, the place where the contract was executed and the parties were domiciled, governs in the absence of a prohibition by the law or public policy of the place where the corporation has its domicile. The respondent contends that under the law of England an assignment to several persons results in their holding the property as joint tenants unless there is in the instrument an indication that the property is to be held in common. Joint ownership with the right of survivorship is not favored by the courts, either in England or in New York, although joint ownership is permitted if the intent is clear. The words "jointly" or "joint tenancy" need not be used to show the intent. New York has provided by statute:

When estate in common; when in joint tenancy. Every estate granted or devised to two or more persons in their own right shall be a tenancy in common, unless expressly declared to be in joint tenancy; * * * [Laws 1909, ch. 52, sec. 66.]

This section applies to personal property. McKinney's Consolidated Laws of New York Annotated (1917), bk. 49, p. 96, and cases there cited. An intention to create joint ownership must be declared in the instrument and, unless the words used are inconsistent with the creation of tenancy in common, an instrument will be held in New York to create common rather than joint ownership. Section 363 (c) of Wharton on Conflict of Laws, 3d ed., 1905, vol. 1, deals with "Assignment of Shares of Corporate Stock." The author there says:

> The assignability of such shares is doubtless to be determined by the law of the domicil of the corporation, though the assignability of a special or qualified interest therein, as distinguished from the assignability of the shares themselves, is to be determined by the law of the place where such interest was created. Assuming the assignability of the shares, the validity and effect of the assignment as between the parties is to be determined by the law of the place where the assignment is made; but the steps requisite to perfect the assignment as against the corporation or the creditors of the assignor are to be determined by the law of the domicil of the corporation; * * *

Other authorities seem to agree that the rule above stated is a correct one. See *Netherwood* v. *Raymer*, 253 Fed. 515. We are not concerned here with any form of transfer of corporate shares made obligatory by the law of England or the bylaws of the corporation. The question is whether, as between the parties themselves, there was created one kind of ownership or another. We see no reason why that question should not be determined by the law under which the parties contracted. Cf. *Netherwood* v. *Raymer, supra*. That law was the law of New York.

The assignment here in question does not indicate in any way that the shares were to be held jointly rather than in common. It provides that they are to be held "subject to the several conditions on which I held the same immediately before the execution hereof" and the transferees agreed to take the shares subject to those conditions. We do not know what conditions are referred to but there is no reason to believe that those conditions would have any bearing upon the question of joint or common ownership. The respondent relies somewhat upon a letter from Charles G. Miller, one of the sons, to the secretary of Babcock & Wilcox, Ltd. The letter was dated June 30, 1923. It was in part as follows:

> On behalf of my father, Mr. C. A. Miller, I am enclosing transfer form covering stock recently issued to him in form of stock dividend. He wishes that stock to be transferred so that all eight names will appear as joint holders just as was requested for his previous holdings.

The "transfer form" referred to was not the assignment here in question. The respondent contends that the use of the word "joint" in the son's letter of June 30 indicates an intention on the part of the father to create joint ownership by his assignment of June 18.

We are not impressed by this argument. The word was used by one other than the grantor. It appears, not in the assignment, but in a letter of a later date and may have carried no such significance, even in the mind of the writer of the letter, as the respondent would attribute to its use. The respondent also points to certain provisions of the articles of association of Babcock & Wilcox, Ltd., relating to " joint-holders of a share ". These provisions do not affect our question of how the shares here involved were owned as between the eight persons. The provisions are not inconsistent with ownership of the shares in common. The respondent also points to the fact that after the death of the decedent, his name was simply crossed off the certificates and that his wife's name was crossed off when she died. We do not see as much significance in this as does the respondent. The petitioner has made out its case. The instrument itself is not sufficient to create joint ownership of the shares and the surrounding circumstances mentioned in the stipulation do not show an intention on the part of the decedent to create joint ownership.

*Decision will be entered under Rule 50.*